Bill WORTHEN *v.* Joe DILLARD, County Judge, and Arnold R. KNIGHT, County Clerk, of Baxter County, Ark.

81-238                                    628 S.W. 2d 7

Supreme Court of Arkansas
Opinion delivered February 16, 1982

*Roy Danuser,* for appellant.

*Friday, Eldredge & Clark,* by: *John C. Echols* and *Robert S. Shafer,* for appellees.

RICHARD B. ADKISSON, Chief Justice. Appellant brought suit under the Declaratory Judgment Act, Ark. Stat. Ann. §§ 34-2501 — 2512 (Repl. 1962), to have a Bond Purchase

Agreement entered into by appellees declared invalid as violating Arkansas' usury provision, Art. 19, § 13 of the Arkansas Constitution. The Baxter County Chancery Court's ruling in favor of appellees is now appealed.

On August 27, 1981, appellees, the County Judge and the County Clerk of Baxter County, authorized a contract for the sale of Baxter County Hospital Revenue Bonds for the purpose of upgrading and expanding the Baxter General Hospital, a county owned and operated hospital. This contract called for an interest rate on the bonds in excess of ten percent for the years 1988—2011. Appellant, a citizen, resident, and taxpayer of Baxter County, brought this action individually and as a representative of other residents of Baxter County to enjoin the sale and issuance of the bonds as an illegal county expenditure in violation of Art. 19, § 13. This section provides:

> All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, . . .

The trial court held that the Depository Institutions Deregulation and Monetary Control Act of 1980, as amended, preempted the ten percent limit on interest rates as applied to the bonds at issue here. Section 511 of this Act is codified in Title 12 U.S.C.A. § 86a (a) and provides:

> (a) If the applicable rate prescribed in this section exceeds the rate a person would be permitted to charge in the absence of this section, such person may in the case of a *business or agricultural loan* in the amount of $1,000 or more, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any such loan, interest at a rate of not more than 5 per centum in excess of the discount rate, including any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the person is located. (Emphasis added)

Appellant argues that the loan as evidenced by the

bonds is not a "business loan" within the meaning of § 86 (a). We agree. The Act does not define "business or agricultural loan" and there is nothing in the legislative history to clarify congressional intent except a Senate report which contrasts "business and agricultural loans" with "consumer and personal loans." Therefore, in absence of any guidance in the statute or legislative history, the term "business loan" must be given its plain and ordinary meaning. We conclude that a loan to upgrade a county owned and operated hospital is not within the plain meaning of the term "business loan" as used in the Monetary Control Act.

Reversed.

HAYS, J., concurs.

STEELE HAYS, Justice, concurring. I concur entirely in the result, but I believe there is a sounder basis for reversal than whether the revenue bonds to upgrade and enlarge a county hospital constitute a "business loan" within the meaning of § 511 of the Monetary Control Act. The answer is not that clear and appellees' arguments are not that easily denied. They submit that Congress intended to classify loans generally as either "consumer or personal" or "business or agricultural" and, thus, by a process of elimination the loan becomes a "business loan."

However that may be, I would reverse for another reason. It is one thing for Congress, acting under the Commerce Clause, to pre-empt the right to govern the interest rate private lenders and borrowers set between themselves, but quite another to claim the pre-emptive right to deny to a state the power to limit its own governmental subdivisions to a rate of interest fixed by the constitution of that state. I cannot say the Monetary Control Act does not purport to do that, but nothing is cited to us to support such an arrogation of power. It is questionable whether the power exists at all, and certainly not in the absence of an express provision. See *National League of Cities* v. *Usery*, 426 U.S. 833 (1976); *Metcalf & Eddy* v. *Mitchell*, 269 U.S. 514 (1926); *United States* v. *California*, 297 U.S. 175 (1936).

Appellees draw a distinction that in *Usery,* Congress sought to impose a burden on the states by amendments to the Fair Labor Standards Act, whereas here, Congress is simply providing an opportunity to compete in the bond market. But the issue is deeper than one of a burden versus a benefit; it involves the fundamental question of where state sovereignty ends and federal sovereignty begins. See *Lane County v. Oregon,* 7 Wall. 71, 19 L. Ed. 101 (1869).