CORNELL & COMPANY, et al., Appellants,

v.

Carolyn PACE, Appellee.

No. 07–84–0166–CV.

Court of Appeals of Texas, Amarillo.

Jan. 21, 1986.

Rehearing Denied Feb. 12, 1986.

---

Templeton & Garner, John Smithee, Amarillo, for appellants.

Sanders, Kiser & Baker, Robert R. Sanders and Van W. Northern, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

The partnerships Cornell & Company and Cornell Investment Company of Amarillo, and the partners of each partnership,[1] have

---

1. Cornell & Company is a CPA partnership, and Cornell Investment Company of Amarillo is a partnership formed to own and lease real property, each of which has as its partners Rupert L. Dowell, Jr., Jack H. Anderson, Jack B. Irwin, Bob G. Zenor, Wilbur E. Swenson, Jr., and Dale A. Swan.

perfected this appeal from a judgment decreeing their joint and several monetary liability to Carolyn Pace, individually and as independent administratrix of the estate of James C. Pace, deceased, in her action to recover the deceased's unpaid interests in the partnerships. Upon the rationale to be expressed, we reverse and remand.

Prior to 31 August 1981, James C. Pace was a partner in several related partnerships, including the two that are appellants in this appeal. On or about that date, he withdrew from the partnerships to start another accounting firm with parties not involved in this litigation. Thereafter in October of 1981, he committed suicide.

Pace's widow, Carolyn Pace, acting individually and as independent administratrix of his estate, instituted the action underlying this appeal, seeking an accounting to recover the unpaid value of the deceased's interests in the partnerships and, because of usurious interest charges made to his partnership account, the cancellation of any debt he owed the partnerships and the recovery of an interest penalty. She also alleged that the partnerships and the partners had converted the unpaid value of the deceased's interests in the partnerships, and the conversion made them liable for prejudgment interest.

Answering, the partnerships and partners, collectively referred to as Cornell, included an allegation that Pace's withdrawal was pursuant to an oral agreement which had these terms: Pace's compensation for his interest in the good will of Cornell & Company would be his taking with him to his new firm various partnership clients, and the credit to or payment of Pace's partnership net worth account, including receipts for work in progress, would be offset by Cornell & Company's cost of developing a partnership oil and gas computer program that Pace took with him. Cornell also alleged that the state interest ceilings had been preempted by a federal monetary control act and, if not preempted, the percentages of money applied to each partner's positive or negative balance in his net worth account was charged pursuant to an oral and implied agreement. Alternatively, Cornell pleaded that if the adjustments to each partner's net worth account were for interest, then Pace and his estate charged or collected from Cornell & Company amounts of interest in excess of the amounts allowed by law, which subjects the estate to liability for the penalties provided by statute.

During the trial and upon Mrs. Pace's objections, the court excluded Cornell's offered testimony, preserved by a bill of exception, of the oral agreement negotiated between Rupert L. Dowell, Jr., the administrative partner of Cornell & Company, and Pace at the time of Pace's withdrawal, and of the oral or implied agreement between the partners, including Pace, for all positive or negative balances in each partner's net worth account to be, respectively, credited or charged interest at the rate of two percent over the prime rate. The objections to and exclusion of the testimony was, as later noted, on the ground that its receipt in evidence would violate the Dead Man's Statute, which then provided that:

> In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

See Tex.Rev.Civ.Stat.Ann. art. 3716 (Vernon 1926) (repealed 1983).[2] The objections and exclusion prevailed over Cornell's urg-

---

**2.** This cause was tried before the statute was deemed to be repealed insofar as it relates to civil actions by the 23 November 1982 order of the Texas Supreme Court adopting, effective 1 September 1983, the Texas Rules of Evidence, which include the subject matter of the statute as Rule 601(b).

ing that the protection of the statute had been waived.

At the conclusion of the trial, the court rendered judgment decreeing Cornell's $114,001.98 liability to Mrs. Pace in her dual capacities upon a jury verdict and the court's findings. The jury found that the deceased's remaining interest in the good will of Cornell & Company was $46,540.84, that attorney's fees for prosecuting her usury claim was $2,700, and that Cornell converted the deceased's partnership interest by failing to timely distribute it. The court added its findings that $44,927.10 was the stipulated value of the deceased's interest in the net worth of Cornell & Company, that the partnership's charge of $2,900 interest on the deceased's $43,386 debt for the computer program development costs was usurious, which worked a cancellation of the debt and forfeiture of the interest charged, that prejudgment interest for the conversion found by the jury was $14,834.04, and that $5,000 was the decedent's interest in Cornell Investment Company of Amarillo.

■ With the first and fifth of ten points of error, Cornell presents its contentions that the trial court erred in refusing to admit the testimony offered by its administrative partner Dowell of oral agreements between the partners, including Pace, concerning, respectively, Pace's withdrawal as a partner and the crediting or charging of interest on a partner's net worth account.[3] The offered testimony was excluded upon Mrs. Pace's first recorded objection that the testimony is hearsay and in violation of the Dead Man's Statute. Cornell contends, and the question we reach is whether, the protection of the statute was waived by Mrs. Pace's inquiries about transactions with the deceased.[4]

In this action by Mrs. Pace that evoked the responses made by Cornell, the Dead Man's Statute, the content of which has been quoted above, renders incompetent Dowell's testimony of conversations and transactions with the deceased Pace, unless he was called to testify thereto by Mrs. Pace. In this connection, Dowell would be considered to be "called to testify thereto by the opposite party" if Mrs. Pace called him as a witness and asked about a transaction with or a statement by the deceased Pace, or if she inquired about the matters in a deposition given by Dowell. *Lewis v. Foster*, 621 S.W.2d 400, 403 (Tex.1981). In that event, the statutory disqualification is

---

**3.** Mrs. Pace filed a motion in limine, seeking an order from the court that prohibited, in the absence of a contrary ruling first obtained from the court, any mention of, *inter alia*, any transaction or agreement, written or oral, between Pace and the other partners at or about the time Pace withdrew from the partnerships or immediately prior to his death. The record does not reveal that the trial court made a ruling on the motion by written order or otherwise; yet, the statement of facts contains indications that at some point the court ruled that any evidence of oral agreements between Pace and the partners is inadmissible because of Mrs. Pace's objection based on the Dead Man's Statute.

**4.** Mrs. Pace's initial response to Cornell's contention is that we need not examine the record to determine whether the protection afforded by the Dead Man's Statute was waived since "the testimony offered by Mr. Dowell was in fact hearsay to Mrs. Pace in her individual capacity, and [Cornell's counsel] failed," in disobedience of *Wilson v. Avery Co. of Texas*, 182 S.W. 884, 886 (Tex.Civ.App.—Amarillo 1916, writ ref'd), "to limit his offer of testimony as to the estate of JAMES PACE, the only party to whom the testimony was not hearsay." Even accepting *ar-*

*guendo*, without pausing to address, the correctness of Mrs. Pace's characterization of the testimony with respect to her separate capacities as a litigant, the response she makes presents no bar to reaching the waiver question. The interests sought to be recovered by Mrs. Pace, both individually and as administratrix, are not separable inasmuch as they are joined in the same person and the right of recovery constitutes an indivisible cause of action; therefore, the testimony, by necessarily affecting Mrs. Pace's interests in both of her roles, is incapable of the limitation she asserts Cornell should have placed on the offered testimony. *Spencer v. Schell*, 107 Tex. 44, 173 S.W. 867, 868 (1915). But more important, the testimony of Pace's agreements, which are in the nature of statements against his interests that are claimed by Mrs. Pace and which would be relevant on the issue and admissible against him if he were living, is admissible, as an exception to the hearsay rule, against his heirs and legal representatives. *Lubbering v. Ellison*, 342 S.W.2d 796, 800 (Tex.Civ.App.—San Antonio 1961, no writ).

waived, and Dowell becomes competent to testify as to the transaction inquired about. *Id.*

■ Before this action was filed, Dowell made and there was presented to Mrs. Pace an accounting summary of Pace's net worth account. The summary was identified as exhibit 1 to the deposition of Dowell taken by Mrs. Pace's counsel prior to trial. Although counsel disclaimed a wont to ask Dowell about any transactions that may have occurred between Pace and Cornell, he did pose to Dowell the following, among other, questions:

Referring you to Plaintiff's Exhibit No. 1, is it a fair statement or not to say, Mr. Dowell, that the premise upon which the exhibit is or was prepared was that there was a debt owed by the Pace estate to the partnership for costs in developing a computer package, computer oil and gas package, and that that debt was to be offset against Mr. Pace's interest, if any, that he owned in the partnership?

\* \* \* \* \* \*

And so, the partnership would be dissolved, and whatever monies the Pace Estate had coming from the partnership—and that's where I don't know exactly the technical term that we are talking about. But whatever monies the estate had coming would be offset by the costs in developing this computer software oil and gas package; is that right?

\* \* \* \* \* \*

What is the accounting partnership; that is, Cornell and Company's position, on the percent interest that the estate owns in that partnership?

\* \* \* \* \* \*

And it's your testimony then, I assume, Mr. Dowell, that Plaintiff's Exhibit 1 as of the date of its preparation, accurately reflects all charges, offsets, and amounts claimed by Cornell & Company in its accounting with the James C. Pace Estate as regards to any interest that Mr. Pace might have owned at the time he was withdrawn?

These specific interrogations of Dowell about the accounting waived the bar of the Dead Man's Statute, and permits Dowell to testify fully concerning all facts attendant upon the preparation of the accounting summary, *Hopkins v. Robertson*, 138 S.W.2d 310, 313 (Tex.Civ.App.—Fort Worth 1939, writ ref'd), including the underlying transactions inquired about that necessarily were with Pace. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 809 (1956).

Moreover, during the trial, Mrs. Pace's counsel, admitting that the computer program development cost is a debt owing to Cornell by the estate, called Dowell as a witness and, questioning him about the debt, asked:

Q. And that that debt was to be offset against any interest that he [Pace] owned in the partnership; is that right?

Further, counsel, in initiating inquiries into the partnership business that went with Pace upon his withdrawal, asked these questions and received these answers:

Q. Subsequent to that time [of Pace's withdrawal], was there a—sometime around the first of September or later than that, was there a letter forwarded from your company to all clients which Mr. Pace was servicing?

A. Not to all of them, to those that he designated to send the letter to.

Q. Well, okay. So, it didn't go to everybody that he was—

A. No.

Q. And did business that was formerly being done at Cornell & Company under Mr. Pace's supervision, go with him to the new business?

A. Yes, it did.

Q. Do you know how much in dollars and cents?

A. Approximately $108,000.

These questions obviously referred to, and called for answers concerning, the withdrawal agreement negotiated between Dowell and Pace. The result is that Dowell was not disqualified by the Dead Man's

Statute from testifying fully about the withdrawal agreement. *Lewis v. Foster, supra.*

■ Mrs. Pace argues that if the statutory disqualification was waived, the exclusion of Dowell's testimony of the oral agreement with Pace was harmless because there was other evidence, admitted over her objection, which, if believed by the jury, tends to establish the existence and terms of the oral agreement. Although we do not doubt that the jury was aware Cornell was asserting the existence of an agreement, we cannot agree that its terms as alleged by Cornell were in evidence before the jury or that the exclusion of Dowell's proffered testimony of the agreement was harmless. The court's exclusion of that testimony kept from the jury the terms and conditions of the alleged agreement—and particularly those terms providing that Pace's compensation for his interest in the good will of Cornell was taking partnership clients to his new firm, and those terms underlying the method of accounting—which would have been direct factual evidence on the sharply drawn and contested real issues in the cause. In the light of the record as a whole, the exclusion of the testimony was calculated to cause and probably did cause the jury to answer the issues as it did to support the judgment rendered against Cornell. *Accord, Duncan v. Smith,* 393 S.W.2d 798, 804–05 (Tex. 1965). Consequently, Cornell's first and fifth points of error are sustained.

■ In its charge to the jury, the court included, over Cornell's objection, special issue no. 5 inquiring whether Cornell converted the partnership interest of the Pace estate by failing to timely distribute the same. The jury answered "yes," and as previously noticed, the court, in rendering judgment, assessed prejudgment interest of $14,834.04 against Cornell for the conversion. By its eighth point of error, Cornell contends the court erred in submitting the issue because there was no evidence to support the submission. The no evidence point has validity only if there is an absence of any evidence of probative force, direct or circumstantial, to raise the issue. *Kentucky Central Life Ins. Co. v. Fannin,* 575 S.W.2d 76, 80 (Tex.Civ.App.—Amarillo 1978, no writ).

■ The partnerships in which Pace was a partner were continuing businesses involving a multitude of transactions and, especially with respect to Cornell & Company, a complexity of accounts, requiring both a detailed accounting to adjust the partner's accounts and a formal accounting to determine a partner's interests. Apparently in recognition of these circumstances and the difficulty of reaching an agreeable accounting, Mrs. Pace specifically alleged in her live trial pleadings that she "seeks an accounting" and damages. One of the causes for damages she pleaded was conversion, based on the allegation that Cornell failed to provide her with Pace's share of the partnerships' assets.

This posture of the cause presents the classical situation in which a partner, or his surviving widow, may not sue another partner or partners for conversion, the only remedy being a suit for, as Mrs. Pace sought, an accounting. *Chipley v. Smith,* 292 S.W. 209, 209–10 (Tex.Comm'n App. 1927, judgmt adopted). This obtains because an accounting and settlement is, in the situation here, a condition precedent to an action based on partnership claims, *Mitchell Resort Enterprises v. C & S Builders,* 570 S.W.2d 463, 465 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.), to ascertain the amount recoverable. *Morgan v. Steinberg,* 23 S.W.2d 527, 533 (Tex.Civ. App.—Amarillo 1929, no writ). Hence, in Mrs. Pace's action for an accounting and recovery of money, conversion will not lie for money represented by a general debt. *Houston Nat. Bank v. Biber,* 613 S.W.2d 771, 774 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Graham v. Turner,* 472 S.W.2d 831, 839 (Tex.Civ.App. —Waco 1971, no writ).

For these reasons, there was no evidence to raise the issue of conversion, and the submission of issue no. 5 over Cornell's objection was harmful error. Cornell's eighth point of error is sustained.

The sustentions of Cornell's first, fifth and eighth points of error require that the trial court's judgment be reversed and the cause be remanded. This action pretermits a consideration of Cornell's other points, except the second one, which are unnecessary for a proper disposition of the appeal, *Mooneyhan v. Benedict*, 284 S.W.2d 741, 745 (Tex.Civ.App.—Austin 1955, writ ref'd n.r.e.), and are unlikely to be raised in the same posture in the event of another trial after remand. *Texas General Utilities Co. v. Nixon*, 81 S.W.2d 250, 255 (Tex.Civ.App. —Beaumont 1935, writ ref'd). The second point is Cornell's presentation of a contention that is likely to be advanced in the event of further trial proceedings after remand, and it is to be addressed. *Indemnity Ins. Co. of North America v. Williams*, 129 Tex. 51, 99 S.W.2d 905, 906 (1937).

Cornell utilizes the second point of error to charge the trial court with error in refusing to hold the interest charges placed on Pace's net worth account in connection with his debt for the computer program are controlled by a 1980 congressional act, 12 U.S.C. § 86a. The act, an amendment to the National Bank Act, was enacted 31 March 1980 to "apply only with respect to business or agricultural loans in amounts of $1,000 or more made in any State during the period beginning on April 1, 1980, and ending ... April 1, 1983...." As material to this cause, the act, as cited by Cornell, provides:

(a) Discount rate on ninety-day commercial paper

If the applicable rate prescribed in this section exceeds the rate a person would be permitted to charge in the absence of this section, such person may in the case of a business or agricultural loan in the amount of $1,000 or more, notwithstanding any State constitution or statute which is hereby preempted for the purpose of this section, take, receive, reserve, and charge on any such loan, interest at a rate of not more than 5 per centum in excess of the discount rate, including any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the person is located.

The following subsection (b) contains the definitions of terms used in the act, and provides that

(1) the term "loan" includes all secured and unsecured loans, credit sales, forbearances, advances, renewals or other extensions of credit made by or to any person or organization for business or agricultural purposes;

together with a definition of the term "person" to mean a natural person and, among other entities, a partnership.

In view of these provisions, Cornell advocates that the act preempts the Texas statutes regulating interest rates and controls the charging of interest to Pace's account because that interest was charged for "the credit extended ... for a computer program which was used solely in the business of James C. Pace." We are not in accord.

The term "business loan" is not defined in the act, and a definition of it did not evolve from the discussion of that term on the floor of the House of Representatives before the enactment of the statute. *See* 126 Cong.Rec. H 2286, 2291 (1980). Therefore, we agree with the holding that, absent legislative or statutory guidance, the term must be given its plain and ordinary meaning. *Worthen v. Dillard*, 275 Ark. 132, 628 S.W.2d 7, 9 (1982).

The usual meaning associated with a "business loan" does not apply, as the record before us is developed, to the debit or credit balance of a partner's net worth account. The recording of credits and debits in a partner's account is to adjust and reflect the fluctuating value of his interest in the partnerships in accordance with the agreement of the partners; therefore, it is merely an accounting to ascertain the partner's interest in the partnerships at the time of the recording. Whether the accounting results in a positive or negative interest at the time, it does not operate to create a new debt; it merely evidences the partner's interest in the partnerships at a given time. Then, the debiting of Pace's

net worth account for the development costs of the computer program is not a "business loan" within the meaning of that term as used in the federal statute and, accordingly, that act is not applicable to control the question of interest charged in this cause. Cornell's second point of error is overruled.

The judgment of the trial court is reversed, and cause is remanded.