BLESSING v ZEFFERO

Docket No. 82575. Submitted January 22, 1986, at Lansing.—Decided March 3, 1986.

Plaintiffs, Donald J. and Marsha K. Blessing, obtained a bank loan for $70,000 in order to loan money to defendants, Robert and Jeanine Zeffero. Plaintiffs retained $1,000 and delivered the remaining $69,000 to defendants. The interest rate on both the bank loan and plaintiffs' loan to defendants was the same, 1% over the New York prime rate. Defendants in turn loaned the money to Zefflamb Industries, Inc., a corporation in which Robert Zeffero was a 92% shareholder and president. Zefflamb Industries made its loan payments directly to plaintiffs. The parties agreed that defendants would pay interest on $70,000. They also understood that, while the plaintiff's loan was made to defendants, the money would in turn be loaned by defendants to Zefflamb to provide it with operating capital. Approximately four months later the defendants executed a promissory note for the $70,000. A number of payments were made but, ultimately, plaintiffs brought an action against defendants, alleging that over $28,000 was still owed by defendants. Defendants asserted, among other defenses, that the interest rate of the loan was usurious. Zefflamb filed a motion to intervene, which was granted, and a third-party complaint against plaintiffs alleging that plaintiffs owed money to Zefflamb. The Genesee Circuit Court, Earl E. Borradaile, J., found that the loan was usurious and denied the collection of interest. Plaintiffs appealed, alleging that their loan to defendants was a business loan subject to a federal law which preempts state usury laws. *Held:*

1. The federal law, 12 USC 86a, applies to a "business or agricultural loan" but does not define the term "business or agricultural loan".

2. It is the substance of a transaction, not its form, which is relevant to a determination of whether the transaction violates

REFERENCES

Am Jur 2d, Interests and Usury §§ 112, 117-121, 205.

Usury, effect of borrower's agreement to pay, guarantee, or secure some other debt owed to or by lender. 31 ALR3d 763.

the usury laws. The courts are not bound by the parties' characterization of the transaction.

3. The loan in question here, that made by plaintiffs to defendants, was a business loan. The parties all knew at all times that the purpose of the loan was to provide Zefflamb with operating capital. Thus, the loan is subject to the provisions of 12 USC 86a.

4. Because the federal statute bases usurious interest on the Federal Reserve discount rate, and because at the time of the loan the interest charged, based on the prime rate, did not exceed the allowable rate based on the discount rate, the loan was not usurious. Furthermore, the federal statute provides for forfeiture of interest only where a usury violation is "knowingly done", and there is no indication that the parties herein knowingly violated the usury provisions. Thus, the loan is enforceable under the federal law.

5. There are several questions regarding the parties' calculations of interest charges and unpaid principal. Those questions are to be resolved by the trial court on remand.

Reversed and remanded for further proceedings.

1. USURY — SUBSTANCE OF TRANSACTION — FORM OF TRANSACTION.

It is the substance of a transaction, not the form, which is relevant when examining the transaction to determine if it violates the usury statutes; moreover, courts are not bound by the parties' characterization of the transaction.

2. USURY — BUSINESS LOANS.

A loan shall be regarded as a business loan subject to the federal usury law, rather than a consumer or personal loan, where the substance of the loan is business, regardless of the form of the loan (12 USC 86a).

*MacDonald & Goren, P.C.* (by *Raymond C. Mc-Veigh*), for plaintiffs.

*Winegarden, Shedd, Haley & Lindholm* (by *Dennis M. Haley* and *Donald H. Robertson*), for defendants.

Before: BRONSON, P.J., and R. B. BURNS and R. C. KAUFMAN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

R. B. Burns, J. The Genesee County Circuit Court awarded plaintiffs a portion of the debt owed them by defendants, but concluded that the loan was usurious and denied the collection of interest. Plaintiffs appeal from the judgment and we reverse.

On March 17, 1981, defendants requested a loan from plaintiffs. Defendants stated that the money borrowed would be loaned by them to Zefflamb Industries, Inc., a corporation in which defendant Robert Zeffero was a 92% shareholder and president. Plaintiffs occupied premises owned by Zefflamb.

Plaintiffs agreed to loan defendants the money, and on March 19, 1981, Robert Zeffero and Donald Blessing went to MNB-Mid-Michigan Bank, where plaintiffs received a $70,000 loan using plaintiffs' home as security. Plaintiffs executed a promissory note for $70,000 in favor of the bank. The note provided for interest at the rate of 1% over the New York prime rate.

Of the original $70,000, plaintiffs retained $1,000 and delivered the remaining $69,000 to defendants. The interest rate was again 1 point over New York prime. Defendants, in turn, loaned the money to Zefflamb. Zefflamb made payments on its loan by paying plaintiffs directly. Zefflamb paid plaintiffs $9,000 on March 24, 1981, as directed by Robert Zeffero. The parties apparently agreed that, as an inducement to plaintiffs to make the loan, defendants would pay interest on $70,000, although defendants only owed $60,000, as described above. The parties understood at all times that plaintiffs' loan was made to defendants, not to Zefflamb. The parties agreed from the start, however, that plaintiffs' loan to defendants would in turn be loaned by defendants to Zefflamb to provide it with operating capital.

On July 13, 1981, defendants executed a promissory note, agreeing to pay plaintiffs $70,000; interest was again set at 1% over the New York prime rate. As security for this note, defendants mortgaged certain real estate owned by them. Defendants made a number of payments, which totaled $56,036.63, including the above-mentioned $9,000 payment on March 24, 1981.

Plaintiffs filed a complaint against defendants on October 20, 1982. Plaintiffs alleged that defendants did not live up to the terms of their July 13, 1981, promissory note and that defendants still owed plaintiffs $28,185.94. Defendants filed affirmative defenses with their answer, claiming the interest rate plaintiffs were charging defendants was criminally usurious. Zefflamb filed a motion to intervene, which was granted on February 1, 1984. Zefflamb's third-party complaint alleged that plaintiffs owed Zefflamb $12,566.03 for office supplies and telephone services.

A nonjury trial took place on April 3, 1984. The attorneys presented the court with their stipulation of facts, which was read into evidence. Additionally, Zefflamb and defendants agreed that plaintiffs' alleged $12,566.03 debt to Zefflamb would be treated instead as a $7,178.53 set-off against any money defendants owed plaintiffs.

Plaintiffs argue that their loan to defendants was a business loan and thus subject to the preemption provisions of 12 USC 86a. Defendants deny that the loan was a business loan, arguing that this Court should look only to the form of the loan between the parties and not to the ultimate use of the proceeds. The trial court ruled that the loan was not a business loan and that the federal statute was inapplicable.

12 USC 86a(a) provides as follows:

"If the applicable rate prescribed in this section exceeds the rate a person would be permitted to charge in the absence of this section, such person may in the case of a business or agricultural loan in the amount of $1,000 or more, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any such loan, interest at a rate of not more than 5 per centum in excess of the discount rate, including any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district were the person is located."

Unfortunately, the statute does not define the term "business or agricultural loan". The Arkansas Supreme Court, in *Worthen v Dillard,* 275 Ark 132, 134; 628 SW2d 7, 9 (1982), stated the following:

"The Act does not define 'business or agricultural loan' and there is nothing in the legislative history to clarify congressional intent except a Senate report which contrasts 'business and agricultural loans' with 'consumer and personal loans.' Therefore, in the absence of any guidance in the statute or legislative history, the term 'business loan' must be given its plain and ordinary meaning."

Given the absence of federal law interpreting the term "business loan", we turn to Michigan decisions reached under the state usury statute. In examining a transaction to determine if it violates the usury statutes, it is the substance, not the form, of the transaction which is relevant. *Abeloff v Ohio Finance Co,* 313 Mich 568; 21 NW2d 856 (1946). Moreover, courts are not bound by the parties' characterization of the transaction. *Id.*

We also find guidance in this Court's decision in *Allan v M & S Mortgage Co,* 138 Mich App 28, 40; 359 NW2d 238 (1984), where the Court stated:

"[W]here an individual borrows money through a dummy corporation, to further his own personal or commercial enterprises, the defense of usury is not available. However, where the loan is made to an individual borrower to discharge his personal debts and obligations, and not in furtherance of a corporate or business enterprise, the individual borrower may assert the defense of usury. This doctrine protects both consumers and lenders. Consumers are protected from the practice of second-mortgage lenders insisting that the consumer form a corporation in order to demand usurious rates of interest. On the other hand, innocent lenders would not be subject to claims of usury by borrowers who were in business, but merely did not engage in corporate formalities."

In *Allan,* the Court was faced with a situation in which the homeowners formed a sham corporation in order to obtain a second mortgage above the usury limits applicable to personal, rather than commercial, borrowers. The Court concluded that the usury defense was available where the corporate form was used to conceal a usurious loan to an individual borrower.

Although the *Allan* Court was not directly faced with a situation of "borrowers who were in business, but merely did not engage in corporate formalities", we believe the rule is equally applicable to this case. We therefore conclude that where the substance of a loan is business, rather than consumer or personal, it shall be regarded as a business loan regardless of its form.

In this case, the parties agree that the ultimate use of the loan was for defendants to provide operating capital to the corporation. In fact, loan payments were made directly to plaintiffs by Zefflamb, rather than through defendants. Given the fact that the parties at all times knew that the purpose of this transaction was to provide Zefflamb with operating capital, we conclude that the sub-

stance of this transaction is one of a business loan subject to 12 USC 86a. The trial court's conclusion to the contrary was erroneous.

It must be determined whether the loan was usurious under the federal statute. This inquiry is hampered by the fact that the statute uses a different fluctuating base, the Federal Reserve discount rate, than that used by the parties, the New York prime rate. Since the two rates are not directly linked, at any given time a rate of one point over New York prime may be more or less than five points over the discount rate. Thus, as apparently happened in the case at bar, an interest rate based upon the prime rate may initially be within the usury ceiling, but subsequently becomes usurious when the prime rate and the discount rate move in opposite directions.[1]

To further complicate matters, 12 USC 86a(c) provides that interest is forfeitable for a usury violation only "when knowingly done". In this case, there is a serious question as to whether charging a usurious rate, even if done, was done with knowledge. The rate provided by the parties, New York prime plus one, was the same as plaintiffs contracted with the bank. The parties could easily have concluded that the rate charged by the bank would be nonusurious.

Moreover, according to documents submitted by the parties, at the time of the loan prime plus one was 18.5% while the discount rate plus five was 21%. Although the prime rate is not required to follow the discount rate, we do not believe that it is necessarily foreseeable that the two rates will move significantly in opposite directions. Indeed, we think it reasonable to expect the two to *generally* move in the same direction.[2]

---

[1] This would happen, in the case at bar, whenever the New York prime rate was more than four points above the discount rate.

[2] The discount rate is the interest rate charged by the federal

Although the better practice would be for lenders to base their interest rates on the discount rate, thus insuring exacting compliance with the federal statute, we decline to adopt such a strict rule. The fact that the statute does not mandate the use of the discount rate and that a violation must be done with knowledge indicates that Congress did not intend such strict compliance.

In this case, the parties used the fluctuating rate as used by the bank in its loan to plaintiffs, the loan was initially 2.5 points below the usury ceiling, and the parties used a basis which had some rational relationship to the discount rate. Under these facts, we cannot conclude that plaintiffs knowingly violated the usury provisions of 12 USC 86a.[3]

Accordingly, we conclude that the trial court erred in concluding that the state usury statute was applicable and that the interest provisions were usurious and unenforceable. We find the loan enforceable under the federal statute.

However, we are not convinced that the parties properly calculated the interest charges and unpaid principal. The only written contract between the parties appears to be a mortgage and mortgage note executed on July 13, 1981, almost 4 months after the loan. Both documents provided that the "interest rate will be calculated from the date hereof on the unpaid balance of said principal sum at 1% per annum over the New York prime rate

reserve banks to member banks for the borrowing of funds from the federal reserve system. See Black's Law Dictionary, p 418 (rev 5th ed, 1979). Thus, there is *some* relation between the two rates. In essence, though perhaps somewhat simplified, the discount rate represents a "wholesale" cost to banks, while the prime rate is a "retail" price by banks.

[3] A different result might be reached if the basis of a fluctuating rate is so unrelated to the discount rate that the possibility that the rate would eventually become usurious is tantamount to a knowing violation of the usury statute.

* * *". The "said principal sum" was stated as being $70,000, even though payments had been previously received. We assume, therefore, that the parties were merely setting forth in writing the terms of the original loan, including the original amount of principal. This leads to the problem created by the fact that only $69,000 was delivered to defendants.

It appears that the $1,000 which was withheld by plaintiffs may have been a loan fee, commonly known as "points", or some other payment to plaintiffs as an inducement to make the loan. This is particularly likely since the rate charged by plaintiffs was the same as that paid by plaintiffs to the bank. Therefore, without this $1,000 fee or payment, plaintiffs would have received nothing for bearing the risk of defendants' default. However, it is not clear that this $1,000 payment was made to compensate plaintiffs for making the loan or whether it should be regarded as payment by defendants on the principal. We leave this question for the trial court.[4]

To provide guidance to the trial court and the parties, the following determinations should be made on remand:

(1) the nature and propriety of the withholding of the $1,000 at the time the loan was made;

(2) the amount and date of payments made by defendants;

(3) the principal balance currently owed after subtracting the payments made to date and after calculating the accrued interest based upon a rate of 1% over the New York prime rate, calculated on the unpaid principal balance; from this award, defendants will be entitled to the stipulated set-off.

---

[4] We also leave for the trial court to determine, if it was a fee, whether it was proper.

Our conclusion renders it unnecessary to consider the question of whether the trial court erred in refusing to set aside the judgment.

Reversed and remanded for further proceedings consistent with this opinion. Costs to plaintiffs.