**Bill DAVIS, Appellant,**

v.

**Timothy J. WARD, et al., Appellees.**

**No. 07–95–0015–CV.**

Court of Appeals of Texas,
Amarillo.

Aug. 29, 1995.

Rehearing Overruled Sept. 29, 1995.

Ralph H. Brock, Lubbock, for appellant.

Ward Freels & Cook LLP, Lubbock, for appellees Gary Ward, Clinton W. Cook.

LaFont Tunnell Formby LaFont & Hamilton, Plainview, for appellee Tom Hamilton.

Hankins Moody & Hays LLP, Lubbock, for appellee Bob Moody.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

REYNOLDS, Chief Justice.

This appeal requires us to determine whether the trial court reversibly erred in disallowing the intervention of attorney Bill Davis, who filed, in the ongoing litigation involving a trust, a motion and plea in intervention to recover an assigned undivided interest of a beneficiary's asserted cause of action. We will affirm.

The litigation stemmed from the administration of the Bonnie R. Howard Trust, which was created by the last will and testament of Bonnie R. Howard for the benefit of Timothy J. Ward (Tim) and Cindy Louise Ogden (Cindy)[1] and their descendants. The trustor specifically provided that

---

1. References herein to Cindy are to the person of Cindy Louise Ogden as she is named in the last will and testament, Cindy Louise Ward as she is

the Trustee may accumulate all or any part of the Income thereof or may pay or expend any part or all of the income thereof, or any part or all of the principal thereof, for the reasonable care, support, maintenance and comfort of TIMOTHY J. WARD and CINDY LOUISE OGDEN and their descendants, in the Trustee's sole and absolute discretion; provided, however, such distribution shall be on a per stirpes basis....

The trustor appointed Birdie Ward (Birdie) as trustee of the trust and empowered her with all the powers defined in the Texas Trust Code,[2] together with certain other specific powers. The trustor also named The Plains National Bank of Lubbock (the Bank) as successor trustee, subject to the proviso that Birdie had the "right to appoint, in writing, one or more successor ... Trustees in the place and stead of The Plains National Bank of Lubbock."

It was established that in contravention of the purpose of the trust to provide for the care and maintenance of Tim, Cindy, and their descendants, Birdie borrowed money from the Bank and pledged as collateral certificates of deposit owned by the trust, which were offset by the Bank to repay the loans made to Birdie. Piqued by Birdie's misuse of the trust funds, Tim, as "the Client," contracted with John L. Barnhill and Davis, as "the Lawyers,"

> to sue for and recover all damages and compensation to which the Client may be entitled as well as to compromise and settle all claims arising out of his claim against the Bonnie R. Howard Trust, Birdie Ward, individually and as Trustee of the Bonnie R. Howard Estate (sic), and Cindy Louise Ogden. To secure the performance of Client's obligations, as set forth below, the Client hereby transfers and assigns to the Lawyers an undivided interest in the Client's claim, such interest being equivalent to the amount or percentage that the

Client promises to pay as set forth by this agreement.

By a following expression of the contract, Tim agreed, in consideration of the Lawyers' services, "to pay the Lawyers one-third of all money and property collected, whether from the proceeds of any suit and judgment or from a settlement." And with respect to a settlement, the contract provided that "[n]o settlement of any nature shall be made for any of the claims of the Client without the complete approval of the Client; nor shall the Client obtain any settlement on the claims without the complete approval of the *Lawyer* (emphasis added)."

As a result of the contract, Barnhill and Davis were assigned one-third of the damages and compensation to which Tim would be entitled, including his claims against the trust, Birdie and Cindy. It is, of course, axiomatic that the assignment gave Barnhill and Davis no greater right than Tim possessed, *City of Taylor v. Hodges,* 143 Tex. 441, 186 S.W.2d 61, 63 (1945), at the time of the assignment. *Carter v. Associates Discount Corp.,* 550 S.W.2d 399, 401 (Tex.Civ. App.—Amarillo 1977, no writ).

Tim, with pleadings signed by Barnhill, filed suit against Birdie, individually and as trustee, the Bank and Cindy. By his live trial pleadings, signed by Davis, Tim sought (1) a declaration of the validity of Birdie's expenditures from the trust; (2) an accounting of the distributions of the funds; (3) Birdie's removal as trustee; (4) exemplary damages as recovery for his allegations of conversion, fraud, breach of fiduciary duty, and breach of trust; and (5) to have the trust terminated and the assets distributed to the beneficiaries, upon his allegations that the purpose of the trust was impossible to fulfill. No allegations of wrong-doing were made against Cindy individually.[3]

The Bank denied Tim's allegations and prayed that Birdie, Cindy and Tim be ordered to settle their differences. With re-

---

designated in the pleadings, and Cindy Louise Lane, her former name.

**2.** Tex.Prop.Code Ann. § 111.001 *et seq.* (Vernon 1995).

**3.** Innuendos were bantered about concerning Birdie's misuse of trust funds for Cindy's benefit to the exclusion of Tim, but no cause of action was assigned against Cindy, and nothing was established in this regard.

gard to the trust funds, the Bank interpleaded for a discharge from liability upon delivery of the funds to the court, and later tendered to the registry of the court $104,079.40, which was represented to be the remaining trust funds on deposit.

Jointly represented by attorney Gary Ward, Birdie and Cindy filed a general denial. Afterwards, Ward, upon discovery of a conflict of interest, withdrew from his representation of Birdie, and she proceeded pro se. Birdie resigned her position as trustee and, by a written document filed with the court, appointed Cindy as successor trustee.

Acting as trustee, Cindy amended her answer and, by her live trial pleadings, cross-claimed against Birdie and the Bank for breach of fiduciary duty, fraud and conversion, and against the Bank for violations of the Texas Deceptive Trade Practices Act, seeking exemplary damages from them individually and collectively. She further asserted her right as trustee to the funds interpleaded by the Bank, and moved to have the funds in the registry of the court distributed to the trust.

On 3 March 1993, Davis sent a letter to the trial judge in which he enclosed a copy of his and Barnhill's agreement with Tim regarding the assignment of "one-third of all money and property collected." On 7 July 1993, Davis withdrew his representation from Tim, but in so doing, stated that the withdrawal "in no way affects his interest and assignment" in the agreement. Barnhill continued, for a time, to represent Tim's interests and appear as his counsel.

The parties in litigation reached an agreement whereby the Bank agreed to pay the trust $85,000 in settlement of all claims of the trust against the Bank, and Birdie and her husband agreed to assign all rights incident to the ownership of her husband's life insurance policy to the Bank in exchange for settlement of the Bank's claims against her.[4] On 20 July 1993, Cindy, as trustee, petitioned the trial court for instructions and moved for approval of the settlement agreement. A

hearing on the petition was set for, and held on, 7 September 1993. Prior to the hearing, on 31 August 1993, Tim moved the court to declare Cindy's appointment void and to compel an accounting.

At the 7 September 1993 hearing, Tim was represented by Barnhill, Cindy by Gary Ward, and the Bank by Tom Hamilton. Birdie appeared pro se. To summarize the events, Hamilton stated, without objection, that it was his understanding Tim was "in agreement that the $85,000 was a fair and just settlement." Barnhill replied that they were "essentially in agreement," but that Cindy should not be allowed to continue as trustee because the appointment was void since Birdie had been charged with, and admitted to, dereliction of duty and appropriating the trust's assets. Tim opposed the distribution of assets to Cindy as trustee and requested that the court retain the funds until final resolution of his claims. Determining an agreement could not be reached at that time, the court was recessed.

On 30 September 1993, the trial court rendered a judgment and included therein its findings of fact and conclusions of law. The judgment recited, among other things, that the settlement agreement was expressly conditioned upon the finding that Cindy's appointment as trustee was proper, that Cindy's appointment as trustee was proper and valid, that she was the only party with a cause of action or standing to make a claim, that she as an individual and Tim as an individual had no cause of action or standing to make claims against the Bank, that Cindy as trustee had the authority to enter the settlement agreement, and that Tim was bound by the actions of the trustee. Despite the recitation that all relief not expressly granted was denied, which made the judgment final for appeal purposes, *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966), the judgment was not treated as the court's final expression on the claims and issues at hand, and no appeal was taken from the judgment.

4. The Bank, hoping to settle with Birdie by the assignment of the rights in the ownership of her husband's life insurance policy, had not filed an action against Birdie, but had threatened to file suit against her if the matter was not settled to the Bank's satisfaction prior to the expiration of the limitations period.

Seven days later, Cindy moved the court to order the $189,079.40 (representing the original $104,079.40 remaining in the trust and the $85,000 in settlement funds) released to her as trustee of the trust. The court set a hearing on the motion for 4 February 1994.

On the day set for the hearing, Davis filed his plea in intervention claiming entitlement to the funds paid in settlement, and attended the hearing. When the trial court inquired if there was any opposition to the intervention, none was expressed except by Barnhill, who stated, "Well we do," and the court reserved a decision whether to grant the intervention. Then, based upon the evidence and arguments at that hearing, the court signed an order on 25 March 1994 decreeing that the funds be distributed to Cindy, trustee, and further ordered that any distribution from the trust funds be in equal amounts to the "beneficiaries" of the trust.

On 20 June 1994, upon Tim's allegations that he had been unable to locate Barnhill and was informed that he was "no longer practicing law in Lubbock, Texas," Bobby J. Moody was substituted for Barnhill as Tim's counsel.[5] Moody, responding on Tim's behalf to a request, made pursuant to the 25 March 1994 order, for a distribution from the trust to the beneficiaries in equal amounts of $15,-000, represented that Tim was agreeable to the distribution, but opposed the check being made payable to him and Barnhill and Davis, since they were not "beneficiaries" of the trust. No order appears in the record concerning the requested distribution.

On 9 September 1994, a final hearing was held for the disposition of all issues and claims by all parties. The ensuing 4 October 1994 judgment recited that Tim and Cindy appeared in person and by counsel, Birdie appeared pro se, and Davis, "a person who previously filed a motion and plea in intervention, appeared in person representing himself pro se," and all announced ready for trial. It was further recited in the judgment that "following a brief recess to allow all parties to confer before starting trial, [Davis] did not subsequently appear. A jury fee having previously been filed [by Cindy], it

was waived and withdrawn by announcement in open court."

After the recess, the parties announced to the court that with respect to a disposition of the cause, and the entry of a final judgment, all claims filed by Tim, and all cross-actions filed by Cindy, will be dismissed, and as to the intervention filed by Davis, if any claim has been made by either Davis or Barnhill, the claim should be denied. By the final judgment from which this appeal was perfected, the trial court determined that the matters between Tim, Cindy, Birdie, and the Bank had been settled to the satisfaction of the parties and the court and that "the motion to intervene by Bill Davis should not be allowed." The decretal portion of the judgment ended with the recitation that the judgment was "a final and complete disposition of all issues, claims, counter-claims and motions presented to the Court. All relief not expressly granted herein is denied."

After the denial of his motion for new trial, Davis requested findings of fact and conclusions of law be entered. Complying, the court entered findings of fact which are not in dispute and, based upon those findings, the court made the following conclusions of law as recapitulated by our expression:

1. The appointment of Cindy as trustee was proper.

2. Cindy, in her capacity as trustee and under the authority of the Texas Property Code, settled the claim and that no other person or entity has a cause of action or standing to make a claim against the Bank.

3. Tim was entitled to take nothing from the defendants.

4. Davis's plea of intervention should be denied.

Davis has not attacked conclusions of law one, two or three.

However, the fourth legal conclusion is disputed by Davis's five-points-of-error attack on the judgment. By the points, Davis contends the trial court erred in (1) rendering judgment on the settlement agreement since he was not a party to that agreement; (2) denying his motion and plea for intervention when there was no motion to strike the

---

5. Barnhill was placed on administrative suspen-   sion by the State Bar of Texas on 13 June 1994.

intervention; (3) disallowing his intervention because he owned part of Tim's lawsuit against the Bank and, thus, had a right to intervene to protect his interest; (4) withdrawing the case from the jury docket without his consent after a jury was requested and the fee timely paid; and (5) failing to grant his motion for new trial since the final hearing was conducted without notice to him. Upon this predicate, Davis seeks a reversal of the trial court's judgment and the rendition of judgment for one-third of the $85,000 the Bank paid to the trust in settlement, or a remand for a new trial.

Underpinning Davis's specific contentions is the basic question whether he, as an intervenor on the assignment from Tim, is positioned to challenge the settlement upon which the final judgment is founded. In this connection, it is noticeable that Davis has not lodged a complaint against the validity of Cindy's appointment and confirmation as trustee of the trust, nor of her authority to consummate the settlement.[6] Neither has he complained that the settlement was the product of fraud or collusion or that Cindy acted improperly in achieving the settlement.[7]

■ Given this situation, Cindy's response to Davis's initial point is that the court did not err in rendering judgment on the agreement because Tim did not own the cause of action he assigned to Davis. This obtains, Cindy continues, because the cause of action belonged to the trust, not to Tim, and Tim is bound by the settlement agreement. *Cogdell v. Fort Worth Nat. Bank,* 544 S.W.2d 825, 828–29 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); *see (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).* Then, she concludes, since Davis contracted to "sue for and recover all damages and compensation to which [Tim] may be entitled," for which Davis's compensation was to be "one-third of all money and property collected," and Tim recovered nothing, Davis's recovery would be one-third of nothing, which is what he received under the court's judgment.

■ Nevertheless, at oral argument on submission, and by a post-submission letter brief, Davis represents that Tim was afforded standing to initiate the action, and to be credited with the recovery from the Bank, by subsections 2 of both sections 281 and 282 of the Restatement of the Law (Second) of Trusts.[8] However, Davis cannot derive comfort from section 281(2), *supra,* which reads:

> If the beneficiary is in possession of the subject matter of the trust, he can maintain such actions against the third person as a person in possession is entitled to make.

The record is clear that at the time Tim's action was filed, Tim was not then nor at any time in possession of the subject matter of the trust estate. Consequently, this subsection is not applicable.

Nor can Davis recover through the assignment from Tim on the strength of section 282(2), *supra,* which is cast in this language:

> If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit

---

**6.** The Texas Trust Code provides that "[a] trustee may compromise, contest, arbitrate, or settle claims of or against the trust estate or the trustee." Tex.Prop.Code Ann. § 113.019 (Vernon 1995).

**7.** Comment (d) in Restatement of the Law (Second) of Trusts, Section 192, is in this language: *"Application to the court.* If the trustee is in doubt whether he should compromise or submit to arbitration a claim, he may ask the instruction of the court or he may agree thereto conditionally upon the subsequent approval of the court."

**8.** Cindy has moved to strike Davis's post-submission brief because the standing theory he now raises was neither presented to, nor ruled upon

by, the trial court. *See* Tex.R.App.P. 52(a); *Ballard v. King,* 652 S.W.2d 767, 769 (Tex.1983). However, at submission Davis offered the theory in reply to a query about standing, which is a component of subject matter jurisdiction and may be raised for the first time on appeal, *Tex. Ass'n of Business v. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993), and he was granted permission to file a post-submission brief, to which Cindy was granted the opportunity to respond, within stated time limits. Consequently, we overrule Cindy's motion to strike and will address the theory. Tex.R.App.P. 74(*o*); *Minneapolis–Moline Company v. Purser,* 361 S.W.2d 239, 246 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.).

in equity against the trustee and the third person.

Although Davis has shown that Birdie, as trustee, had failed to proceed against the Bank when Tim's action was initiated, and he argues that recovery would not have been achieved from the Bank but for Tim's action, Tim's right to personally recover from the Bank under this section was a limited one, which did not materialize as explained by comment h under the section in these words:

> Disposition of the proceeds recovered. Where the trust is of such a character that if the trustee had brought an action against the third person the proceeds would be immediately payable to the beneficiary, the beneficiary is entitled to keep whatever he recovers from the third person under the rules stated in Subsections (2) and (3). If, however, he would not be entitled to immediate payment, the court will direct payment by the third person to the trustee or will appoint a new trustee and direct payment by the third person to the new trustee.

Because the payment of trust funds is within the trustee's sole and absolute discretion, Tim had no right to immediate payment of the proceeds of the trustee's settlement with the Bank. Thus, the trial court, upon confirming the validity of Cindy's appointment as trustee and determining she had sole authority to consummate the settlement agreement, properly approved payment to the trustee of the funds received from the Bank.

Still, Davis contends that his employment contract with Tim afforded him the right to approve the settlement, which right he was denied. Even though Tim assigned one-third of all money collected, his rights are derivative rights under the trust, *Cogdell v. Fort Worth Nat. Bank,* 544 S.W.2d at 828, and he could not, and did not purport to, bind the collection of monies from the Bank by the trust, a power possessed by the trustee which, when exercised, bound Tim. *Id.* at 829. Moreover, the court determined that the trustee was the only person authorized to settle the claim and that Tim had no cause of action or standing to make a claim against the Bank, a determination which has not been questioned by Davis. Thus, if Davis had a contractual right to approve the settlement and was denied that right, that is a matter between him and Tim only; it was not, and could not be, a right to pass on a settlement wholly within the trustee's power to consummate. *Id.*

Parenthetically, it is observed that the trial court seemingly noticed that albeit the contract referred to Barnhill and Davis as "the Lawyers," the contract provided that any settlement must be approved by Tim and "the Lawyer," singular. And, at the time the settlement was negotiated and first approved by Tim, Davis had withdrawn from representation of him, and he was only represented by Barnhill, who as a "Lawyer" under the contract, acquiesced in the settlement, objecting only to Cindy continuing to act as trustee.

Under all these circumstances, the trial court cannot be faulted for rendering judgment on the settlement agreement even though Davis was not a party to the agreement. Davis's first point of error is overruled.

■ Davis's remaining points are predicated upon his theory that he had the right to intervene to protect his interest in Tim's lawsuit against the Bank. Because, as the litigation developed, Tim, and thus Davis, had no standing to proceed against the Bank, an address of the points is unnecessary to the proper disposition of the appeal. Tex. R.App.P. 90(a); *Cornell & Co. v. Pace,* 703 S.W.2d 398, 404 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.). Moreover, any trial court error posed by the points was not reversible error, for the errors alleged did not amount to such a denial of Davis's rights as was reasonably calculated to cause, and probably did cause, rendition of an improper judgment in the cause. Tex.R.App.P. 81(b)(1).

Accordingly, the judgment is affirmed.